CASE 44.—ACTION BY AMANDA WINBURN AGAINST AMAN-
DA WITT AND OTHERS TO PARTITION LAND.—
June 18, 1909.

## Winburn v. Witt, &c.

Appeal from Estill Circuit Court.

J. P. ADAMS, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Affirmed.

1. Mortgages—Adverse Possession by Mortgagee.—By analogy
to Ky. St. 1909, sec. 2539, providing that after a mortgagee
of real property, or any person claiming under him, has had
15 years' continuous adverse possession, no action shall
be brought by the mortgagor or any one claiming under him
to redeem it, if a mortgagor by a verbal contract surrenders
the mortgaged land in satisfaction of the mortgage and places
him in possession, and the mortgagee holds and claims ad-
versely for 15 years, he acquires good title.

2. Mortgages—Adverse Possession—Sufficiency of Evidence.—
A mortgagee, acquiring possession of the mortgaged premises
by a verbal surrender of the same to satisfy a mortgage,
held, under the evidence, to have held the land adversely for
the statutory period of 15 years.

3. Trial—Trial by Court—Submission of Issues to Jury.—
Whether an issue out of chancery should be submitted to a
jury is discretionary with the trial court.

J. B. WHITE and HAZELRIGG & HAZELRIGG for appellant.

McQUOWN & BECKHAM for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirm-
ing.

In 1877 or 1878 J. C. Matherly died intestate, leav-
ing, surviving him, as his only children, two daugh-
ters, Amanda and Sarilda. Amanda married Wil-
liam Winburn, now deceased; and Sarilda, who is

dead, married John Winburn, who died in 1897. The present appellant is the daughter of Amanda, and the appellees are the children of Sarilda. Matherly, at the time of his death, owned certain real estate, consisting of his home farm, containing some 170 acres, and 150 acres of timber land adjoining it. About two years after his death, the home farm was divided, but the 150 acres was not. In 1906 this action was brought by Amanda Winburn against the children and heirs of Sarilda Winburn, for the purpose of having this 150-acre tract divided; Amanda claiming to be entitled to one-half of it. The heirs of Sarilda answered, denying that Amanda owned any interest in the land, and averred that Matherly had sold the land to John Winburn, and put him in possession thereof, and that Winburn and his descendants had been in the actual, adverse, peaceable, continuous possession of the land for 30 years next before the institution of this suit.

It appears from the evidence that in May, 1876, Matherly, being indebted to John Winburn in the sum of $1,800, executed to him a mortgage on the land now in controversy to secure the payment of the debt, and it is the contention of the heirs of John Winburn that Matherly soon after the execution of this mortgage gave up the land to Winburn to satisfy it, and that Winburn and his heirs have been in the possession of it since. It will be seen that the title of the heirs of John Winburn depends upon the question whether or not their ancestors took the land in satisfaction of his mortgage debt, and has since continuously and adversely held possession of it. The entry and claim of ownership of John Winburn was under and by virtue of the verbal surrender to him of the

land by Matherly to pay the mortgage debt, and so the right of his heirs to hold it rests on adverse possession.  They do not claim to have any paper title. On the other hand, Amanda Winburn insists that her right to an undivided interest in the land was always recognized by John Winburn and his family, and that she frequently exercised acts of ownership over the land by cutting timber and in other ways.  Aside from other evidence that we will presently notice, there are three facts that strongly support the contention of John Winburn's heirs.  These are: (1) That no attempt has ever been made to enforce the collection of the mortgage debt of John Winburn, nor is there any evidence that it was satisfied other than by the surrender to him of the land.  (2) The fact that, when the other adjoining lands of Matherly were divided between his two daughters the land upon which the mortgage was given, and which at the time of the division was claimed by John B. Winburn, was not divided or attempted to be divided. (3) That no attempt was made by Amanda Winburn to have the land in controversy divided from the time when J. C. Matherly died in 1877 or 1878, until this suit was brought in 1906, 29 years thereafter.

Amanda Winburn testifies that she and her family cut timber from the land in dispute for fire wood and fencing; but she was not able to state whether John Winburn knew about this or not.  She assigned as the only reason for not dividing the land in controversy when the other was divided that they were not ready to divide it.  J. A. Winburn, a son of Amanda Winburn, supported her in the statement that some timber for fencing had been cut on the land. Another witness said that in 1877  John Win-

burn and William Winburn cut a raft of logs off this land, and that at that time William Winburn claimed to own a one-half interest in it; and yet another, that it was generally understood Amanda owned an interest in the land. But, aside from the three significant facts heretofore mentioned, the overwhelming weight of the evidence is in favor of the contention of the heirs of John Winburn. The mortgage executed by Matherly to John Winburn is in the record, and several witnesses testify that they heard Matherly say that he let John Winburn have the land to satisfy the mortgage. A number of others say that John Winburn, after the surrender of the land to him by Matherly, cleared up and fenced a portion of it, and by himself and tenants cultivated it, cut timber from it, and used the place as he did the adjoining land on which he lived. It is also in evidence that, when the division of the Matherly land was made between his two children, John Winburn gave to Amanda some 10 acres of the land surrendered to him by Matherly for the purpose of equalizing the division. There is also evidence to the effect that John Winburn always listed this land for taxation. In fact, a careful examination of the record leaves no room to doubt that John Winburn, and those claiming under him, have been in the possession of this land, holding and claiming it as their own, for nearly 30 years; and although John Winburn did not enter under a paper title, the long and uninterrupted possession of himself and descendants gives them a complete possessory title. If a mortgagor by a verbal contract surrenders the mortgaged land to the mortgagee in satisfaction of the mortgage, and places him in possession, and the mortgagee holds and claims adversely under this entry and possession

for 15 years, he acquires a good title. This is settled by analogy in section 2539, of the Kentucky Statutes of 1909. reading: "After a mortgagee of real property, or any person claiming under him, has had fifteen years' continuous adverse possession, no action shall be brought by the mortgagor, or any one claiming under him, to redeem it."

The point is also made that the court erred in refusing the appellant a jury trial, but there is no merit in this contention. In the first place, whether or not an issue out of chancery should be submitted was a matter in the discretion of the trial court, and, in the second place, the motion was not in time.

Wherefore the judgment of the lower court is affirmed.